## SKOZIER v
## CHICAGO PNEUMATIC TOOL CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15560. Decided Oct 26, 1936

Samuel J. Kohnhauser, Cleveland, for appellant.

Ben G. Ruby, Cleveland, for appellee.

ROSS, J, (1st Dist), and MONTGOMERY and SHERICK, JJ, (5th Dist), sitting by designation.

## OPINION

By ROSS, J.

Appeal on questions of law from a judgment of the Common Pleas Court of Cuyahoga County, whereby the appellee was awarded compensation under the Workmen's Compensation Act.

In the petition it is alleged that the decedent of claimant suffered an injury on the 14th day of March, 1930, during the course of his employment and by reason thereof, and that such injury so received caused his death.

In the answer it is asserted that death was due solely to the natural progress of a disease affecting the decedent's heart.

The reply was a general denial.

Were we to apply the rules of pleading and procedure in a strict manner, it is at least questionable whether the theory of the claimant as set out in the petition was maintained in the evidence, for the obvious theory of the claimant as developed in the evidence is that the death of the decedent was due to a disease of the heart which was accelerated by the injury of which complaint is made, thus causing an earlier death of decedent than would have occurred had the injury not been incurred by the decedent.

In a case where the factor of acceleration is present, and the evidence is all before the pleader at the time of drawing the petition, as is the case in appeals involving claims under the Workmen's Compensation Act, it would seem that the true theory of the case should be incorporated in the petition by a full allegation of the invasive facts rather than to develop such theory inferentially.

As no question is made of variance we pass on to consideration of the assignmens of error, chief of which are that a verdict should have been instructed for the defendant, and that the verdict is against the weight of the evidence.

The evidence in our opinion conclusively develops that the decedent for many years had suffered from an abnormal limitation of the function of the heart.

The physician who attended him shortly before his death on the 15th of December, 1931, testified:

"Q. Now, doctor, what do you call nature of the heart trouble he had?

A. From history and findings I made the following diagnosis, chronic valvular endocarditis, which means a chronic disease in the valves of the heart causing injury to the valves and producing injury to his aortic and mitral valves causing aortic regurgitation and mitral regurgitation with its resultant cardiac decompensation, fibrilation and chronic passive congestion of all his organs, especially kidneys.

Q. That would account for the condition of the kidneys which you found by urinalysis?

A. Yes."

The evidence also indisputably develops that, on the 14th of March, while employed by appellant, the deceased incurred an accidental injury during the course of his employment and by reason thereof. He, while assisting in lowering a large bin down an elevator shaft, was caused to fall down the shaft when a rope supporting the bin broke. He fell a distance of some five or six feet on top of the bin, rolled off and fell some eleven feet further to the bottom of the pit.

It is also apparent that the injury so received produced most serious, immediate and extended consequences. He was badly bruised about the chest and back, was in the hospital for a number of days, was almost entirely incapacitated for several weeks and immediately developed symptoms indicating the presence of the heart condition which up to that time had as far as the record shows been wholly unsuspected by anyone including the decedent.

In spite of the fact that it was then apparent to the decedent that he was evidently suffering from a serious limitation of his normal heart action, he returned to his employment on April 7th, 1930. There is some dispute in the evidence as to whether or not he resumed his duties in full which were strenuous to say the least, requiring him to shovel coal, move ashes in wheelbarrows, roll barrels, fire furnaces, and lift heavy bodies.

There is also conflicting evidence upon the visible presence of symptoms of the condition of his heart. However this may be, again the evidence is clear that he remained at his employment, was paid the full wages paid him before the accident of March 14th, 1930, and gave satisfactory service to his employers. If the appellant knew of any loss in efficiency it was not made apparent by any action on its part developed in the evidence.

In the latter part of October and the first of November, 1931, he had a heart attack which incapacitated him for some two weeks. He again returned to his employment, resumed his duties, suffered a complete collapse in the latter part of November, 1931, and after a brief illness died on December 15th, 1931.

The record presents largely a battle between medical experts. Their opinions, guesses, speculations and theories occupy the larger portion of the record. Some of these treated the decedent, others predicated their conclusions upon the facts given them in hypothetical questions. Three distinct lines of inference are developed by their statements:

First: That the decedent died solely by reason of a defective heart gradually weakening and producing related disease of the other organs of the body dependent for their health upon its normal functioning.

Second: That the defective heart condition with the attendant consequential diseases of the other organs of the body, was gradually intensified by the resumption of the normal duties of the decedent, and that the injury received by decedent was a mere incident and wholly uncontrolling in producing the final fatal conclusion which was an irresistible consequence of his defective heart condition, and which result could only have been delayed by the decedent positively ceasing all work of any kind requiring physical effort.

Third: That the injury of March 14th, 1930, caused a shock to the decedent's heart and nervous system, put an added strain upon the normal requirements which that organ was designed to meet; accentuated the degenerating processes naturally progressing toward death, shortened the life of decedent, and was in short the immediate cause of death, although the effects of the injury did not bring about his demise for over a year.

Certainly, in view of such evidence the appellee was entitled to have a jury pass upon the issues of fact presented.

There is no right existent in this court to substitute its conclusion for that of the jury when fair conflict of evidence presents alternative conclusions. The trial court stated in the record when dual motions for instructed verdict had been made that it would have found for appellant were it not for the accompanying reservations present. It is unnecessary if not improper

for us to state our conclusions upon the evidence, otherwise than to say that we do not find the verdict against the weight of the evidence.

We find no error prejudicial to appellant in the other assignments of error and the judgment is affirmed.

MONTGOMERY and SHERICK, JJ, concur.